UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRA INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VALSPAR CORPORATION, <br><br> Defendant. | NO. CV-10-026-JLQ <br><br> **MEMORANDUM OPINION and ORDER DENYING MOTION TO DISMISS** |

**BEFORE THE COURT** is the Defendant[1] Valspar Corporation's ("Valspar") Motion to Dismiss Based on Forum Selection Clause (Ct. Rec. 18), pursuant to Fed. R. Civ. P. 12(b)(3). Plaintiff TRA Industries (doing business as "Huntwood") responded in opposition (Ct. Rec. 25) and Valspar replied (Ct. Rec. 28). Huntwood, with leave of the court, filed a sur-reply (Ct. Rec. 46). The court heard oral argument regarding the Motion on July 13, 2010. Christopher Tompkins appeared on behalf of Valspar. Michael Church and Melody Farance participated on the part of Huntwood.

This is a breach of contract case involving alleged product failure, breach of warranty, with a counter-claim of failure to make payment for product purchased by Huntwood. Valspar contends that a forum selection clause on the back of its invoice grants Minnesota state courts exclusive jurisdiction over any disputes arising from the underlying agreements is binding, rendering venue in the Eastern District of Washington

---

[1] Valspar is also the Counterclaimant against Huntwood, as well as the Third-party Plaintiff against Third-party Defendant Tim Hunt. For the purposes of this Order, Valspar is universally referred to as the Defendant.

ORDER - 1

inappropriate. Huntwood argues that the forum selection clause never became part of the agreement between the parties, and litigation in Minnesota would be inappropriate as a *forum non conveniens*. For the reasons stated herein and in court the Motion is Denied.

## I. Introduction

Huntwood is a Spokane-based cabinetry business, producing and installing both commercial and residential cabinets. Valspar, a Delaware corporation with its principal place of business in Minnesota, manufactures paint and other wood-finishing products. On December 1, 2006, Huntwood and Valspar signed a Sole Supplier Agreement ("Sole Supplier Agreement") under which Huntwood agreed to purchase all of its wood-finishing products from Valspar for the next three years. The agreement required Valspar to ship ordered product within seven (7) days of receiving a purchase order from Huntwood. Valspar agreed to credit Huntwood $100,000 upon execution of the Sole Supplier Agreement and $5,714 each month thereafter, until $300,000 had been credited *in toto*.

In January 2009, after the Sole Supplier Agreement expired, Huntwood and Valspar executed a Stocking Agreement ("Stocking Agreement"). The Stocking Agreement stated that Valspar would stock certain products for Huntwood to order, and Huntwood agreed to take delivery of a predetermined maximum amount of each product 90 days after manufacture thereof, presumably to prevent waste. The General Warranty attached to the Stocking Agreement contained specific terms of sale agreed upon by the parties which did not include the venue or choice of law provisions from the invoices, relied upon by Valspar.

A transaction would be conducted in the following manner. First, Huntwood would send Valspar a Purchase Order. Valspar would then ship the ordered products to Huntwood in Spokane from its Seattle warehouse, accompanied by a Bill of Lading. Later, at some undisclosed time, Valspar would send a customer invoice ("invoice") to Huntwood. The invoices, Ct. Rec. 22, Ex. C, reflected the amount of product ordered and the date payment was due. The very bottom of the front of each invoice contained

this notice, in very small font:. **IMPORTANT NOTICE TO PURCHASER**

> Terms and conditions on the front and back of this invoice constitute the entire agreement between the seller and purchaser pertaining to the subject matter of this invoice. No other terms and conditions, including those in the purchaser's purchase order, shall be effective unless agreed to in writing by the seller. Seller objects to any terms and conditions in the purchaser's documents that are inconsistent with those contained in this invoice.

On the back of the invoice certain terms and conditions were stated, although it is clear that none of such terms and conditions were specifically negotiated and agreed upon. Included in the terms and conditions on the back of the invoice were provisions entitled "Applicable Law" and "Exclusive Jurisdiction:"

> a. Applicable Law. The validity, performance and construction of this Agreement shall be governed by the laws of the State of Minnesota, USA.
>
> b. Exclusive Jurisdiction. The state and federal courts of the State of Minnesota shall have exclusive jurisdiction over any lawsuit or other legal proceeding arising out of this Agreement or relating to the Products. Seller and Buyer hereby consent to the jurisdiction of such courts.

According to Huntwood's internal procedures, a shipment from Valspar would be delivered to the Receiving Department, and the accompanying Bill of Lading would then be sent to the Purchasing Department where it would be matched to the Purchase Order that precipitated the shipment. These two documents would then be forwarded in tandem to Theresa Ryle ("Ryle") in Huntwood's Accounts Payable Department. When Huntwood thereafter received an invoice from Valspar, it would be processed directly to Accounts Payable and matched to the appropriate Purchase Order and Bill of Lading. After being matched, the data on the invoice would be entered into a computer for payment approval by Tim Hunt ("Hunt"), President of Huntwood.

On May 1, 2009, Tim Hunt executed a Guaranty in which he agreed to personally guarantee payment of any obligation owed to Valspar by Huntwood.

Huntwood received deliveries from Valspar through November 2009, when relations between the two entities deteriorated. Huntwood has not paid Valspar for shipments received from June-November 2009, totaling $392,700.75. Huntwood paid all previous invoices from Valspar, until June 2009.

Huntwood filed its Complaint in Spokane County Superior Court on December 28, 2009, and Valspar removed the action to this court on the basis of diversity jurisdiction

ORDER - 3

on January 27, 2010. Huntwood alleges that the products supplied by Valspar were defective, the level of product support was not as promised, and that Valspar violated the agreement of the parties by increasing prices three times in a 14-month period. The causes of action consist of, *inter alia*, breach of contract and breach of various warranties. On February 11, 2010. Valspar filed its Amended Answer, Counterclaim for breach of contract, and Third-Party Complaint against Tim Hunt arising out of his Guaranty.

## II. Standard of Review

Valspar's Motion, though based on the validity of the forum selection clause, is properly brought pursuant to Fed. R. Civ. P. 12(b)(3) (improper venue). *See Arguenta v. Banco Mexicano*, *S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Analysis under Rule 12(b)(3), unlike that under Rule 12(b)(6), permits a district court to consider facts outside of the pleadings, and is consistent with the Supreme Court standard for resolving forum selection clause disputes. *Id.* The pleadings are not taken as true. If the parties have agreed on a forum selection clause, persuasive evidence must be submitted by the party challenging the validity of such a forum selection clause in order to gain the relief sought. *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 280 (9th Cir. 1984); *Spradlin v. Lear Siegler Management Services Co., Inc.,* 926 F.2d 865, 868 (9th Cir. 1991). The dispute here, however, is whether the parties agreed to the forum selection clause specifically or by course of conduct.

Federal law governs the interpretation and enforcement of forum selection clauses. *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir. 1988). State law, however, governs contract formation and the terms contained therein. *Lowden v. T-Mobile USA, Inc.,* 512 F.3d 1213, 1217 (9th Cir. 2008). Both parties agree that state law governs, but Valspar believes Minnesota law is applicable due to the choice of law clause contained in the contested invoice, while Huntwood believes Washington law is applicable. While this court is bound by Washington choice of law provisions being the forum state, *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005), where there

ORDER - 4

is no actual conflict between Washington law and the laws of the other state (Minnesota), a conflict of law analysis is unnecessary. *Freestone Capital Partners L.P. v. MKA Real Estate Opportunity Fund*, 230 P.3d 625, 635 (Wn.App. Div. 1, 2010).

Though Valspar suggests that the choice of law is irrelevant as the outcome would be the same under either state's law, it should be noted that Washington has codified U.C.C. § 2-208, *see* RCW 62A.2-208, while Minnesota has not. All other relevant U.C.C. provisions have been codified in both Minnesota and Washington. Huntwood gives no analysis why Washington law should apply, merely assuming that it does. Valspar, in its Reply brief, relies heavily on RCW 62A.2-208, Ct. Rec. 28, 5-8, without citing Minnesota law. To the extent there is a conflict, Washington courts apply the "most significant relationship" test, set forth in the Restatement (Second) Conflict of Laws § 145 (1971). *Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 580 (1976). Given that neither party argues that Minnesota and Washington law conflicts, and Valspar's reliance on RCW 62A.2-208, the court will apply Washington law. Washington law is also the appropriate choice of law under Washington's most significant relationship test.

### III. Discussion

The issue before the court is whether the "Applicable Law" and "Exclusive Jurisdiction" clauses contained on the back of the invoices sent by Valspar to Huntwood constituted a term of the underlying contracts, either through modification under U.C.C § 2-209, or addition under U.C.C § 2-207. If the clauses were part of the agreements, venue is not appropriate in this court and the matter should be dismissed. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972).

Valspar put forth three arguments in support of the forum selection clause's inclusion in the underlying contract. First, Valspar argued that the invoices sent to Huntwood were independent, binding contracts. This argument, however, was abandoned by Valspar in its reply brief, Ct. Rec. 3, 10-13, and is not addressed herein. Second, Valspar claims the invoices were *ex post* modifications of the Stocking

ORDER - 5

Agreement. Third, that the invoices represented a written confirmation or acceptance of the parties' original agreement, and the additional terms contained therein were part of the Stocking Agreement *ab initio*.

A. Invoices as modifications of the Stocking Agreement

The Sole Supplier agreement expired in late 2009, three years after it became effective. Ct. Rec. 22, Ex. A. The Stocking Agreement was the contract in effect at the time the dispute arose that the invoice's Terms and Conditions could modify. Valspar argues that the invoice's Terms and Conditions were a modification of the Stocking Agreement, to which Huntwood assented due to its lack of objection and course of performance. Ct. Rec. 19, 13:4-8.

Huntwood argues that it never expressly or impliedly assented to the invoice's Terms and Conditions because no one with decision-making authority at Huntwood ever saw the invoice and that there was never any mutual agreement between Valspar and Huntwood to modify the Stocking Agreement or incorporate the claimed Terms and Conditions on the back of the invoices. Ct. Rec. 25, 6:1-15. Huntwood also argues that its conduct and course of performance did not manifest assent to the invoice's Terms and Conditions, but merely demonstrated compliance with the payment provisions of the existing Stocking Agreement. Ct. Rec. 25, 6:26-33.

RCW 62A.2-209 requires agreement, but not consideration, for a modification of a prior agreement to be binding. Assent to a contractual modification may manifest, and thus become binding, through course of performance and acquiescence when a party has "repeated occasions for performance." RCW 62A.2-208(1). Mere silence is not sufficient to establish assent to a contractual modification. *Alaska Pacific Trading Co. v. Eagon Forest Products, Inc.*, 85 Wn.App. 354, 360 (Wn.App. Div. 1, 1997), nor does the mere forwarding of new Terms and Conditions by one party bind the other party, without more.

When considering what terms were included in a contract at the formation stage pursuant to U.C.C. § 2-207,[2] courts have held that a course of dealing analysis should not make binding terms and conditions repeatedly mailed by one party to the other where no reciprocal action is taken. *See Step-Saver Data Systems, Inc. v. Wyse Technology,* 939 F.2d 91, 104 (3rd Cir. 1991); *Premix-Marbletite Manufacturing Corp. v. SKW Chemicals, Inc.,* 145 F.Supp. 2d 1348, 1356 (S.D. Fla. 2001). Neither one of these cases applied the terms and conditions analysis to a modification of an existing agreement pursuant to U.C.C. § 2-209. One district court has, however, applied the reasoning of *Step-Saver* to a § 2-209 modification in the form of a license agreement accompanying computer software. In *Arizona Retail Systems v. Software Link*, 831 F.Supp. 759 (D. Ariz. 1993), the district court followed *Step-Saver* in holding that under § 2-209, "assent [to a modification] must be express and cannot be inferred merely from a party's conduct in continuing with the [existing] agreement." *Id.* at 764.

Valspar cites the district court case of *Comerica Bank v. Whitehall Specialities, Inc.*, 352 F.Supp. 2d 1077 (C.D. Cal. 2004). That case differs from the circumstances of the matter *sub judice* in that the *Comerica* court found that the parties had agreed the invoice submitted by the supplier A & J Cheese was forwarded pursuant to the agreement of the parties and was mailed along with the bill of lading. The court found that the "invoice and bill of lading were a written agreement between A & J and Whitehall." *Id.* at 1082. There was no such agreement herein.

The court is persuaded by the reasoning in *Arizona Retail Systems* and *Alaska Pacific Trading Co, supra*. Actions taken in accordance with an existing contractual obligation cannot indicate assent to a modification thereof. For a party's course of performance to indicate assent to a modification, the performance must be related in some affirmative manner to the proposed modification and differ from the performance already required of the party by the existing contract. Huntwood acted in the manner

---

[2] U.C.C. § 2-207 concerns contract formation, not modification of an existing contract, and is discussed in greater detail in Sec. III-B, *ante*.

ORDER - 7

required by the Stocking Agreement and no further.  Such performance did not manifest assent to the invoice's Terms and Conditions, including the forum selection clause.  Absent such assent, the Terms and Conditions did not modify the existing Stocking Agreement.

B.  Additional Terms

Alternatively, Valspar argues that its invoice constituted a confirmatory memorandum containing additional terms, which pursuant to RCW 62A.2-207(2), does not require a meeting of the minds to become binding, provided the additional terms do not, *inter alia*, materially alter the contract.  When an additional term in a confirmatory memorandum is material, however, the additional term is unenforceable absent explicit consent from all parties to be so bound.

Valspar's § 2-207 argument fails at the threshold, as a forum selection clause constitutes a material alteration to a contract.  The Washington Court of Appeals has so ruled.  *Tacoma Fixture Co. v. Rudd Co.,* 142 Wn.App. 547 (Wn.App.Div. 2, 2008).  See also *General Instrument Corp. v. Tie Mfg., Inc.,* 517 F.Supp. 1231, 1234 (S.D.N.Y. 1981); *Metropolitan Alloys Corp. v. State Metals Industries, Inc.,* 416 F.Supp. 2d 561, 567 (E.D. Mich. 2006).  A clause that limits venue to one state, particularly a different state from the domicile of the party to be bound, is material, as venue for dispute resolution not only involves travel, but also local laws, procedure, counsel, and jury selection.  The parties in the matter *sub judice* have found the forum selection clause sufficiently material to justify the expenditure of not insignificant attorney's fees in contestation of that issue.

Valspar does not argue that Huntwood ever explicitly agreed to the forum selection clause, only that it was a non-material alteration, rendering explicit agreement unnecessary.  Since the forum selection clause was material, the absence of explicit agreement thereto by Huntwood prevents the invoice's unilateral forum selection clause on its back from being considered part of the underlying Stocking Agreement or an agreement of the parties.

ORDER - 8

## IV.  Conclusions

A modification to an existing agreement is binding on a party if it assents thereto. Such assent may not manifest through silence, but must be explicitly stated, or else manifest through course of performance, lack of objection, and acquiescence. Huntwood's payment of the invoices herein did not constitute an affirmative act manifesting assent to the Terms and Conditions contained in an invoice mailed after the purchase order by Huntwood and delivery of the order by Valspar.  Nor did the invoice's Terms and Conditions become part of the underlying Stocking Agreement as additional terms.  The forum selection clause constituted a material alteration requiring explicit agreement thereon before it could become part of the Stocking Agreement. This result is consistent with the recent ruling of the Washington Court of Appeals in *Tacoma Fixture v. Rudd Company*, 142 Wash. App. 547 (2008), a case with very similar factual allegations.

 In light of the foregoing, Huntwood's *forum non conveniens* argument is moot. Accordingly,

**IT IS HEREBY ORDERED**:

1. Valspar's Motion to Dismiss Based on Forum Selection Clause (Ct. Rec. 18) is **DENIED**.

2. This threshold matter having been resolved, the parties shall commence full discovery forthwith.

The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 19th day of July, 2010.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
